DELBERT G. SWAIN, Employee Plaintiff v. C & N EVANS TRUCKING CO., INC., Employer SELF-INSURED (ASSOCIATED RISK MANAGEMENT, SERVICING AGENT), Defendant

No. COA96-764

(Filed 20 May 1997)

## 1. Workers' Compensation § 341 (NCI4th)— Form 21 Agreement—erroneous average weekly wage—mistake of law—not basis for setting aside

The Industrial Commission erred in setting aside a Form 21 Agreement for compensation on the ground that it was entered as a result of mutual mistake of fact as to the amount of plaintiff's average weekly wage since the alleged mistake was one of law, and there was no evidence of fraud, misrepresentation, undue influence, or abuse of a confidential relationship. Assuming that the error was not a mistake of law, it was the result of defendant employer's negligence and is not a basis for setting aside the Agreement. N.C.G.S. § 97-17.

**Am Jur 2d, Workers' Compensation §§ 513-515.**

## 2. Workers' Compensation § 296 (NCI4th)— suspension of benefits—refusal to accept rehabilitation services

The Industrial Commission was justified in suspending plaintiff's workers' compensation benefits pursuant to N.C.G.S. § 97-25 where the evidence in the record supported the Commission's findings that plaintiff refused to accept rehabilitation services after being ordered to do so by the Commission.

**Am Jur 2d, Workers' Compensation §§ 389, 390.**

**Workers' compensation: reasonableness of employee's refusal of medical services tendered by employer. 72 ALR4th 905.**

**What amounts to failure or refusal to submit to medical treatment sufficient to bar recovery of worker's compensation. 3 ALR5th 907.**

Appeal by plaintiff from Opinion and Award for the Full Commission filed 30 January 1996. Heard in the Court of Appeals on 19 March 1997.

*Lennard D. Tucker for employee-plaintiff.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by Bruce A. Hamilton, and Karen K. Prather, for employer-defendant.*

GREENE, Judge.

Delbert Swain (plaintiff) appeals from an opinion and award of the North Carolina Industrial Commission (Commission) setting aside a Form 21 Agreement (Agreement) with C & N Evans Trucking Co., Inc. (defendant) and terminating plaintiff's compensation benefits.

On 6 June 1991 plaintiff sustained an injury to his foot by accident arising out of and in the course of his employment with defendant. On 9 June 1991 an Agreement was agreed to by defendant, its workers' compensation carrier and plaintiff and approved by the Commission. The Agreement provided that the "actual average weekly wage of the employee at the time of said injury" was "1469.58" and that the defendant and the "insurance carrier hereby undertake to pay compensation to [plaintiff] at the rate of $406.00 per week beginning June 15, 1991, and continuing for necessary weeks."

Judy Johnson (Johnson), personnel and safety director for defendant, calculated plaintiff's average weekly wage for the Agreement. She "pulled [plaintiff's] payroll file" and determined his wage by "us[ing] his gross trips earnings and divid[ing] it by the number of weeks worked." Johnson did not know the amount of plaintiff's expenses when she figured his average weekly wages and did not ask him for his expenses or his assistance in determining that figure. Johnson called plaintiff prior to his receiving the Agreement and told him that he was required to sign it to receive any benefits.

Plaintiff presented evidence that when he signed the Agreement he did not know how his average weekly wage was determined and the $1,469.58 on the Agreement was "probably [his] average gross" wages. He assumed that no expenses had been deducted from that figure.

Clarence Evans (Evans), the owner of defendant who had been an owner/operator in the trucking business for fifteen years, knew that owner/operators kept their own expenses. According to Evans, "a good rule of thumb" as an "owner/operator" in the trucking business, is that "typical take-home pay is generally about a third of the gross revenue." According to Evans, Johnson wrote down plaintiff's

gross earnings because "she had no idea what his expenses is [sic] out on the road."

Defendant filed three separate applications to stop payment of compensation (Form 24) based upon plaintiff being "uncooperative and noncompliant with vocational rehabilitation." The Commission notified plaintiff of its receipt of each Form 24 and on 4 December 1992 and 29 March 1993 ordered him "to cooperate with rehabilitation" and stated that benefits were contingent upon such cooperation. On 3 December 1993 the third Form 24 was approved by the Commission at which time defendant ceased paying compensation to plaintiff. The Form 24 alleged that plaintiff had been "authorized to return to his former work duties" by Dr. Noah and plaintiff "has been uncooperative and noncompliant with vocational rehabilitation." Although plaintiff still complained that he could not work due to pain in his foot, the Commission did "not accept as credible plaintiff's testimony."

At the hearing before the Commission plaintiff presented evidence that he originally went to vocational rehabilitation meetings once a week, but eventually the counselor told him that she was required to start meeting with him only once a month. Defendant stated that the vocational rehabilitation services lasted only two months longer before they were stopped, but did not indicate why they were stopped. Plaintiff stated that he was fully cooperative during the rehabilitation sessions and generated from five to seven of his own job leads each week in addition to those found for him by the rehabilitation counselors.

There was also evidence that plaintiff tried rehabilitation of his foot "two or three times" and quit rehabilitation in March 1992. When plaintiff was later offered further rehabilitation he decided not to participate. The notes of the case manager, which are a part of this record, reveal that plaintiff in March and April of 1992 was "unwilling to participate in any treatment approaches that may [have] improve[d] his foot symptoms."

The Commission found as a fact that plaintiff refused "as of 29 March 1993" to "accept rehabilitation services" and that when the Agreement was signed, both parties "were operating under a mutual mistake of fact as to plaintiff's average weekly wage."

The Commission concluded that the Agreement should be set aside based on the parties' "mutual mistake of fact" and that plaintiff

was barred from receiving further compensation due to his refusal "as of 29 March 1993" to participate in vocational rehabilitation. Plaintiff was entitled to receive compensation for the temporary disability of his foot at the rate of $326.26 per week, subject to a credit to defendant for compensation already paid. Plaintiff was also entitled to 10.8 weeks of compensation at the same rate for the seven and one-half percent disability of his foot, subject to a credit to defendant for compensation previously paid.

Based on its conclusions the Commission determined that "[i]nasmuch as defendant has over-paid compensation in the amount" and "inasmuch as defendant has over-paid compensation in the terms of the number of weeks . . . due and payable . . . plaintiff is entitled to no further compensation" and "defendant is entitled to a credit for the amount of its overpayment of compensation made to plaintiff."

---

The issues are whether (I) there was a mutual mistake of fact as to plaintiff's average weekly wage requiring the Agreement be set aside, and (II) the evidence supports the finding of the Commission that the plaintiff refused to accept vocational rehabilitation.

I

[1] Plaintiff argues the Commission erred when it set aside the Agreement on the grounds that it was entered into as a result of a mutual mistake of fact.

Section 97-17 of the North Carolina General Statutes provides that the Commission may set aside a Form 21 Agreement if it appears that the agreement was entered into under a mutual mistake of fact. N.C.G.S. § 97-17 (1991). A mutual mistake of fact is a mistake "common to both parties and by reason of it each has done what neither intended." *Financial Services v. Capitol Funds*, 288 N.C. 122, 135, 217 S.E.2d 551, 560 (1975). A mistake of law ordinarily "does not affect the validity of a contract." *Greene v. Spivey*, 236 N.C. 435, 444, 73 S.E.2d 488, 495 (1952). If, however, the mistake of law is attended by "fraud, misrepresentation, undue influence, or abuse of a confidential relationship" the mistake can support rescission of the agreement. 13 Am. Jur. 2d, *Cancellation of Intruments* § 36, at 526 (1964).

In this case the alleged error in the Agreement relates to the computation of the "average weekly wages." The determination of the

plaintiff's "average weekly wages" requires application of the definition set forth in the Workers' Compensation Act, N.C.G.S. § 97-2(5) (1991), and the case law construing that statute and thus raises an issue of law, not fact. *See Lawrence v. Tise,* 107 N.C. App. 140, 145, 419 S.E.2d 176, 179 (1992) (legal issue presented where resolution of issue requires application of fixed rules of law); *Craft v. Bill Clark Construction Co.,* 123 N.C. App. 777, 780, 474 S.E.2d 808, 810-11 (not always appropriate to deduct expenses incurred in earning those wages in computing "average weekly wages"), *disc. rev. denied,* 345 N.C. 179, 479 S.E.2d 203 (1996). Because there is no evidence of fraud, misrepresentation, undue influence or abuse of a confidential relationship, any mistake made by either or both of the parties to the Agreement in the computation of the "average weekly wages" is not a basis for setting it aside.

In any event, even assuming that the inclusion of the sum of $1,469.58 as the "average weekly wage" was not a mistake of law and that plaintiff's expenses should have been deducted from the gross income in calculating the "average weekly wages," any error was the result of the defendant's negligence in calculating the figure. The defendant prepared the Agreement (without checking with the plaintiff to determine his expenses) and delivered it to the plaintiff with instructions to sign it in order to receive his benefits. Equity will not relieve a party from an agreement "entered into by reason of a mistake resulting from negligence where the means of knowledge were easily accessible." 13 Am. Jur. 2d, *Cancellation of Instruments* § 34, at 525 (1964). The Commission therefore erred in setting aside the Agreement.

II

[2] Section 97-25 of the Workers' Compensation Act provides that "[t]he refusal of the employee to accept any medical, hospital, surgical or other treatment or rehabilitative procedure when ordered by the [Commission] shall bar said employee from further compensation until such refusal ceases." N.C.G.S. § 97-25 (1991). The standard of review on appeal from the Commission is whether there is any competent evidence to support the Commission's findings of fact and whether those findings support its conclusions. *Russell v. Lowes Product Distribution,* 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).

There is evidence in this record to support the finding of the Commission that the plaintiff refused to accept rehabilitation serv-

ices after being ordered to do so by the Commission. Although the evidence is conflicting, there is competent evidence that the plaintiff quit rehabilitation of his foot in March of 1992 after only two or three sessions and was unwilling to pursue further treatment. The Commission, on 29 March 1993, ordered the plaintiff to "cooperate with rehabilitation" and the evidence supports the finding that he did not do so. Thus the Commission was justified in suspending benefits effective 29 March 1993.[1]

Having held that the Commission erred in setting aside the Agreement this case must be remanded to the Commission for reinstatement of the Agreement and defendant is required to pay all sums, including interest, which should have been paid pursuant to the Agreement. *See Mullinax v. Fieldcrest Cannon, Inc.,* 100 N.C. App. 248, 253, 395 S.E.2d 160, 163 (1990). Defendant need not, however, make any payments that were due subsequent to 29 March 1993. This suspension of payments shall remain in place until the Commission determines, pursuant to section 97-25, that plaintiff's refusal to accept vocational rehabilitation has ceased.

Affirmed in part, reversed and remanded.

Judges WALKER and McGEE concur.

---

1. We are aware that the Commission had earlier on 4 December 1992 ordered the plaintiff to cooperate with rehabilitation and payments could have been suspended by the Commission effective on that date. The Commission, however, chose not to suspend the payments until 29 March 1993, the date of the second order, and thus the plaintiff has not been prejudiced by the Commission's selection of the later date. The defendant has not complained of this decision by the Commission.