***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding good grounds to reconsider the evidence, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The carrier on the risk on March 15, 1994 was Ace USA (formerly Cigna).
4. Plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer on March 15, 1994.
5. The parties entered into a Form 21 Agreement that was approved by the Industrial Commission on May 10, 1994. Plaintiff has been paid temporary total disability compensation at a weekly rate of $466.00 from March 16, 1994 until the present. The following exhibits were stipulated to by the parties:
a. Industrial Commission forms
b. 1994 W-2 Wage and Earning Statement of plaintiff
 c. 1993 W-2 Wage and Earning Statement of plaintiff and six pages of Wage Documentation.
8. The issue before the Commission is whether the Form 21 in this matter should be set aside pursuant to N.C. Gen. Stat. § 97-17 based upon an incorrect average weekly wage; and, if so, what is the correct average weekly wage of plaintiff.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission makes the following:
 FINDINGS OF FACTS
1. Plaintiff worked for defendant-employer as the director of Market Place Creative School, a child-care center. Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendant-employer on March 15, 1994.
2. On or about March 21, 1994, Cheryl Thomas, the office assistant for defendant-employer, prepared a Form 19 that was then signed by Linda Hester, president of defendant-employer. Ms. Thomas had only been working in this job for four months at the time she prepared the Form 19. On line 18(d) of the Form 19, Ms. Thomas inserted the figure $923.08 as plaintiff's average weekly wage. This figure was actually plaintiff's biweekly salary as of the date of injury.
3. Defendant-carrier subsequently prepared a Form 21 Agreement, which also stated that plaintiff's average weekly wage was $923.08. The reasonable inference to be drawn from the use of that figure in the Form 21 Agreement was that the carrier relied upon the wage information contained on the Form 19.
4. On or about March 29, 1994, plaintiff met with Ms. Thomas and signed the Form 21 Agreement. Plaintiff did not carefully read the Form 21 before signing it, but Ms. Thomas told plaintiff that she was receiving the maximum amount she could get and did not go through the actual computation of the weekly wage with plaintiff. Pursuant to the Form 21, plaintiff's average weekly wage was $923.08, which yielded the maximum compensation rate for 1994 of $466.00. Plaintiff has been paid $466.00 per week on an ongoing basis since March 16, 1994.
5. Because defendants never submitted a Form 22 Wage Information Chart, it is difficult to calculate plaintiff's average weekly wage with any degree of accuracy. At the time of her compensable injury, plaintiff was earning a biweekly salary of $923.08, which yields an annual salary of $24,000.08. Plaintiff also received a bonus on a quarterly basis. For the second, third and fourth quarters of 1993, plaintiff received bonus payments in the total amount of $3,343.40. In April 1994, plaintiff received a bonus payment of $1,797.00 for the first quarter of 1994. Plaintiff also received a supplemental payment of $100.00 per month for the preparation of menus for no longer than six months preceding her injury. These menu preparation duties had terminated prior to the injury. The bonus and supplemental payments were made to plaintiff in lieu of wages as a specified part of her wage contract and were therefore a part of her earnings and should have been used to calculate plaintiff's average weekly wage. The total of the annual compensation itemized above is $29,740.48. Using the first method of calculating average weekly wage as required by N.C. Gen. Stat. § 97-2(5) derives an average weekly wage of $571.93 (dividing $29,740.48 by 52 weeks), which would have yielded a compensation rate of $381.30.
6. Defendants paid weekly compensation benefits to plaintiff at the incorrect rate for over six years before seeking to set aside the Form 21 on the basis of mutual mistake. It is undisputed by the parties that the Form 21 shows an incorrect average weekly wage. The record does not contain any allegations that the agreement was entered into on the basis of fraud, misrepresentation or undue influence.
7. Defendants have not brought this action without reasonable grounds.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. An agreement between the employer, carrier and employee for the payment of compensation benefits, when approved by the Commission, is binding on the parties. McAninch v. Buncombe County Schools, 347 N.C. 126,489 S.E.2d 375 (1997). N.C. Gen. Stat. § 97-17 provides that the Commission can set aside a Form 21 Agreement if it appears that the agreement was entered into on the basis of fraud, misrepresentation, undue influence or mutual mistake.
2. In this case, the parties executed a Form 21 Agreement in which it was stipulated that plaintiff's average weekly wage was $923.08. In addition to using the incorrect biweekly wage amount, defendants failed to calculate as wages the bonuses and supplemental pay plaintiff received in the 52 weeks preceding the compensable injury by accident. Therefore, defendants failed to properly apply the statutory definition of "average weekly wage." N.C. Gen. Stat. § 97-2(5).
3. In order to set aside a Form 21, the agreement must have been entered into under a mutual mistake of fact. Swain v. C N EvansTrucking Co., 126 N.C. App. 332, 484 S.E.2d 845 (1997). A mutual mistake of fact must be common to both parties and must have caused each party to do what neither intended. Id. A mistake of law, however, does not affect the validity of an agreement unless accompanied by fraud, undue influence or abuse of a confidential relationship. Foster v. CarolinaMarble and Tile Co., 132 N.C. App. 505, 513 S.E.2d 75 (1999); Swain v. C N Evans Trucking Co., supra. The computation of plaintiff's average weekly wage involves application of the definition set forth in N.C. Gen. Stat. § 97-2(5) and the case law construing that statute and therefore raises an issue of law not fact. Swain v. C N EvansTrucking Co., supra.
3. The Form 21 Agreement in this matter sets out an incorrect average weekly wage, which was the result of a mutual mistake of law. Therefore, this agreement may not be set aside pursuant to N.C. Gen. Stat. § 97-17. Swain v. C N Evans Trucking Co., supra.
4. Assuming arguendo that the miscalculation of the average weekly wage was not a mistake of law, any error in the wage amount was the result of defendants' negligence in calculating the figure. Defendants prepared the agreement and presented it to plaintiff with instructions to sign it in order to receive benefits. "Equity will not relieve a party from an agreement `entered into by reason of a mistake resulting from negligence where the means of knowledge were easily accessible.'" Swainv. C N Evans Trucking Co., supra, citing 13 Am.Jur.2d, Cancellationof Instruments § 34, at 525 (1964). Defendants argue that plaintiff was also negligent because she failed to read the agreement before signing it. However, there is no evidence of record that, had she read the Form 21, plaintiff would have realized that an error was made in the calculation of her average weekly wage. In fact, the weekly benefit amount was less than the wages she actually received prior to the injury. In addition, although plaintiff may have known that $923.08 was more than her regular wages, plaintiff was told by defendant-employer's representative that the amount was the maximum she could receive.
6. Defendants brought this action on reasonable grounds and not based upon stubborn, unfounded litigiousness and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.Sparks v. Mountain Breeze Restaurant, 55 N.C. App. 663, 286 S.E.2d 575
(1982).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The Form 21 Agreement in this matter shall not be set aside. The amount listed as plaintiff's average weekly wage on the original Form 21 shall continue to be used by defendants to compute plaintiff's average weekly disability compensation.
2. Defendants shall continue to pay plaintiff total disability compensation at a weekly rate of $466.00 and continuing until further order of the Commission.
3. A reasonable attorney's fee of 25% of the compensation benefits payable to plaintiff is approved for plaintiff's counsel. Defendants shall deduct every fourth compensation check from the sum due plaintiff and pay this amount directly to plaintiff's counsel.
4. Defendants shall pay the costs due the Commission.
This the ___ day of November 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
LKM/kjd