NO. COA13-1028

NORTH CAROLINA COURT OF APPEALS

Filed: 1 April 2014

VICKIE MILLER,
    Employee/Plaintiff

    v.                                From the Industrial Commission
                                      I.C. No. 675930
CAROLINAS MEDICAL CENTER—
NORTHEAST, Self-Insured Employer,
    Defendant.


Appeal by Defendant from opinion and award entered 30 May 2013 by the North Carolina Industrial Commission. Heard in the Court of Appeals 23 January 2014.

*The Sumwalt Law Firm, by Vernon Sumwalt, for Plaintiff.*

*Hedrick Gardner Kincheloe & Garofalo, LLP, by Jeffrey A. Kadis, M. Duane Jones, and Melissa H. Grimes, for Defendant.*

DILLON, Judge.

Defendant Carolinas Medical Center — Northeast appeals from an opinion and award of the Full Commission of the North Carolina Industrial Commission reforming a Form 21 agreement executed by Defendant and Plaintiff Vickie Miller and granting Plaintiff's claim for additional workers' compensation benefits relating to a previously determined compensable injury. For the

following reasons, we affirm in part, vacate in part, and reverse and modify in part.

## I. Factual & Procedural Background

Plaintiff was thirty-two years old and had been employed by Defendant as an emergency room nurse for more than eleven years at the time of her hearing before the Full Commission. The record evidence, as presented before the Full Commission, tends to show the following: On 21 August 2006, Plaintiff sustained an injury to her lower back while working within the scope of her employment with Defendant. Defendant did not contest the compensability of Plaintiff's injury and paid for Plaintiff's medical treatment through 26 December 2006, when Plaintiff's physician, Dr. Michael Meighen, determined that Plaintiff had reached maximum medical improvement and assigned her a five percent permanent partial disability (PPD).

The parties signed a Form 21 agreement entitling Plaintiff to five percent PPD as compensation for her 2006 injury consistent with Dr. Meighen's determination. The PPD award was calculated based on an average weekly salary of $689.21 and corresponding compensation of $459.50. The Form 21 agreement was approved by the Full Commission on 29 November 2007.

Plaintiff proceeded to perform her job duties and did not seek further treatment for her back until 9 September 2008, when she returned to Dr. Meighen reporting increased pain in her lower back. Ultimately, Dr. Meighen opined that Plaintiff's "issues [were] unrelated to any work-related injury[,]" speculating that Plaintiff might have contracted Lyme disease. As a result of Dr. Meighen's determination, Defendant filed a Form 61 on 26 September 2008 denying Plaintiff further coverage for medical treatment relating to her 2006 injury.

On 31 December 2008, Plaintiff presented for treatment with Dr. Brian Rose, an orthopedic surgeon who specializes in treating spinal injuries. Dr. Rose opined that Plaintiff's back issues "likely correspond[ed] to her original work injury."

On 17 July 2009, Plaintiff presented for treatment with Dr. Daniel Oberer, a board-certified neurosurgeon, who determined that Plaintiff's back injury required surgery. Dr. Oberer performed three surgical procedures on Plaintiff. Although the first two procedures failed to produce the desired results, the third procedure, which was performed on 1 November 2010, proved successful. Plaintiff thus returned to her full-time nursing position with Defendant on 31 December 2010 and has continued working in that capacity ever since.

In November 2010, Plaintiff filed a Form 18M with the Commission, seeking medical compensation for her 2006 injury in addition to the coverage already provided under the Form 21 agreement that had been approved by the Full Commission in 2007. On 29 August 2011, Plaintiff filed an Amended Form 18, alleging that there had been a "change of condition" since she entered into the Form 21 agreement. Plaintiff also requested that her claim be assigned for hearing, asserting that Defendant had underpaid her PPD benefits "based on [a] miscalculation of [her] average weekly wage" in the Form 21 agreement. In response, Defendant filed a Form 33R asserting that Plaintiff had "failed to make her claim regarding a change of condition within 2 years of the last payment of medical compensation" and that, accordingly, her claim was barred under the applicable statute of limitations.

On 17 November 2011, Plaintiff's claim came on for hearing before Deputy Commissioner James C. Gillen, who ultimately entered an opinion and award favorable to Plaintiff. Defendant appealed to the Full Commission, which, by opinion and award entered 30 May 2013, affirmed with modifications the Deputy Commissioner's decision. The substance of the Full Commission's opinion and award, in pertinent part, was as follows:

(1) The Form 21 agreement was reformed by the Commission to reflect what it determined to be the correct average weekly wage, $691.11, instead of $689.21, to which the parties had agreed in the original Form 21 agreement;

(2) Defendant was ordered to pay Plaintiff $18.90, representing the deficiency owed to Plaintiff as a result of the new computation of the average weekly wage;

(3) Plaintiff's claims for additional benefits relating to the August 2006 accident were not time-barred;

(4) Defendant was ordered to pay Plaintiff temporary total disability benefits in the amount of $460.76 – an amount based on the recalculated average weekly benefits – for the periods between 2008 and 2010 that Plaintiff missed work due to her injury; and

(5) Defendant was ordered to pay Plaintiff's medical bills incurred subsequent to the Form 21 agreement relating to Plaintiff's back injury.

From this opinion and award, Defendant appeals.

## II. Analysis

### A. *Standard of Review*

Our standard of review is well-established:

> Our review of an opinion and award by the Commission is limited to two inquiries: (1) whether there is any competent evidence in the record to support the Commission's findings of fact; and (2) whether the Commission's conclusions of law are justified by the findings of fact. If supported by competent evidence, the

> Commission's findings are conclusive even if the evidence might also support contrary findings. The Commission's conclusions of law are reviewable *de novo*.

*Legette v. Scotland Mem'l Hosp.*, 181 N.C. App. 437, 442–43, 640 S.E.2d 744, 748 (2007) (internal citations omitted).

*B. Reformation of the Form 21 Agreement*

Defendant first contends that the Full Commission erred in reforming the amount of the average weekly wage from the amount contained in the Form 21 agreement that had been approved by the Full Commission in 2007. We agree.

With respect to Plaintiff's average weekly wage, the parties agreed in the Form 21 agreement that "[t]he average weekly wage of the employee at the time of the injury, including overtime and allowances, was $689.21, subject to verification[.]" It is unclear whether, in changing the average weekly wage figure from $689.21 to $691.11, the Full Commission was *rescinding* the "average weekly wage" provision in the Form 21 agreement pursuant to N.C. Gen. Stat. § 97-17, or whether the Full Commission was simply *enforcing* the "average weekly wage" provision, specifically, the phrase which provides that the calculation was "subject to verification." We believe, in either case, that the Full Commission erred in changing the agreed-upon figure for the reasons stated below.

To the extent that the Full Commission's "reformation" constituted a *rescission* of the Form 21 agreement, we believe that we are compelled under *Swain v. C & N Evans Trucking Co., Inc.*, 126 N.C. App. 332, 484 S.E.2d 845 (1997), to conclude that the Full Commission lacked the authority to change the Plaintiff's average weekly wage since any mistake by the parties in its calculation was a mistake of law, not of fact and, therefore, not subject to rescission.

Rescission of a workers' compensation settlement agreement, such as a Form 21, is governed by N.C. Gen. Stat. § 97-17, which provides, in pertinent part, as follows:

> No party to any agreement for compensation approved by the Commission shall deny the truth of the matters contained in the settlement agreement, unless the party is able to show to the satisfaction of the Commission that there has been error due to fraud, misrepresentation, undue influence or *mutual mistake*, in which event the Commission may set aside the agreement. Except as provided in this subsection, the decision of the Commission to approve a settlement agreement is final and is not subject to review or collateral attack.

N.C. Gen. Stat. § 97-17(a) (2011) (emphasis added). The foregoing provision "provides the Commission with the authority to set aside a Form 21 Agreement entered into upon a mutual mistake of *fact*." *Foster v. Carolina Marble & Tile Co., Inc.*,

132 N.C. App. 505, 508-09, 513 S.E.2d 75, 78 (1999) (citing N.C. Gen. Stat. § 97-17) (emphasis added). "A mistake of law, however, unless accompanied by fraud, misrepresentation, undue influence, or abuse of a confidential relationship, 'does not affect the validity of a contract.'" *Id.* at 509, 513 S.E.2d at 78 (citation omitted). In *Swain*, we addressed the issue of whether the Commission should have set aside a Form 21 agreement on grounds of an "alleged error in the Agreement relat[ing] to the computation of the [claimant's] 'average weekly wages.'" *Swain*, 126 N.C. App. at 335, 484 S.E.2d at 848. We held the following:

> The determination of the plaintiff's "average weekly wages" requires application of the definition set forth in the Workers' Compensation Act, N.C.G.S. § 97-2(5) (1991), and the case law construing that statute and thus raises an issue of law, not fact. *See Lawrence v. Tise*, 107 N.C. App. 140, 145, 419 S.E.2d 176, 179 (1992) (legal issue presented where resolution of issue requires application of fixed rules of law); *Craft v. Bill Clark Construction Co.*, 123 N.C. App. 777, 780, 474 S.E.2d 808, 810-11 (not always appropriate to deduct expenses incurred in earning those wages in computing "average weekly wages"), *disc. rev. denied*, 345 N.C. 179, 479 S.E.2d 203 (1996). Because there is no evidence of fraud, misrepresentation, undue influence or abuse of a confidential relationship, any mistake made by either or both of the parties to the Agreement in the computation of the "average weekly wages" is not a basis for setting it aside.

*Id.* In *Foster*, we construed *Swain* as standing for the proposition that where "the parties needed to look to the Act, as well as the caselaw [sic] construing the Act, in order to determine the correct amount of the plaintiff's average weekly wages, . . . the issue [was] one of law, not fact." *Foster*, 132 N.C. App. at 509, 513 S.E.2d at 78.

Here, the Full Commission expressly found that the average weekly wage figure of $689.21 set forth in the original Form 21 agreement had been calculated by (1) dividing Plaintiff's earnings for the prior 52 weeks by 365 and then (2) multiplying the quotient by 7. The Commission further found that our General Statutes – specifically, N.C. Gen. Stat. § 97-2(5) – do not provide for the calculation of the average weekly wage to be made in the manner that had been employed in the original Form 21 agreement, but instead require that the calculation be made by dividing Plaintiff's earnings for the previous 52 weeks by 52, which, in this case, would yield a quotient of $691.11.

Applying *Swain*, we conclude that the alleged error in computing Plaintiff's average weekly wages on the parties' Form 21 agreement constituted an error of law, not of fact. As reflected in the Commission findings, the Commission's review of the purported computational error, as well as the propriety of

the method which had produced that error, required reference to, and construction of, the provisions of our General Statutes. The nature of this inquiry clearly reveals the asserted error as one of law. Accordingly, we hold that based on the precedent of this Court, the Commission erred in setting aside the original Form 21 agreement. *Swain*, 126 N.C. App. at 335, 484 S.E.2d at 848; *Foster*, 132 N.C. App. at 509, 513 S.E.2d at 78.[1]

Plaintiff alternatively argues that the Full Commission was not actually *rescinding* the parties' agreement in Form 21 agreement concerning the average weekly wage figure, but rather *enforcing* a contractual provision therein that provides that the average weekly wage figure is "subject to verification." To the extent that the Full Commission was merely *enforcing* this verification provision, we believe that our analysis in *Swain* does not apply because, as we noted in *Pruett v. Pruett Floor Coverings*, 2004 WL 383281 (N.C. App. 2004) (unpublished), after

---

[1] We note that the Commission cites *Bond*, 139 N.C. App. 123, 532 S.E.2d 583 (2000), in its opinion and award as supportive of its decision to reform the Form 21 agreement. The procedural posture presented in *Bond*, however, renders that case inapplicable. In *Bond*, the plaintiff appealed to this Court, assigning error to the computational method *used by the Commission* in its opinion and award from which the plaintiff was appealing. *Id.* at 127, 532 S.E.2d at 586. Here, Plaintiff is not appealing from an opinion and award in which the allegedly erroneous computation was made; rather, Plaintiff has raised the alleged error in order to invalidate the original Form 21 agreement.

*Swain* was decided, the verification provision was not made part of the standard Form 21 agreement until after *Swain*.[2]  In other words, the standard Form 21 which was analyzed by this Court in *Swain* did not contain the verification provision.

In the present case, Defendant essentially argues that the parties do not have the right to seek verification of the average weekly wage under the verification provision of the Form 21 agreement once the agreement has been approved by the Full Commission.[3]  The Form 21 agreement does not specify any time by which either party seeking verification of the average weekly wage figure must request such verification.  Our Supreme Court has held that when a contract does not specify a time by which some duty or right therein is to be performed or exercised, "a reasonable time will be implied as a matter of law."  *Colt v. Kimball*, 190 N.C. 169, 173, 129 S.E. 406, 409 (1925) (holding that under a contract to deliver goods, and no time of delivery

---

[2]  The revised Form 21 also provides that the parties to an agreement may agree to waive the "subject to verification" language.

[3]  We note that in *Pruett* we held that the parties had the right to request the Full Commission to "verify" the average weekly wage figure contained in a Form 21 agreement.  *Pruett*, 2004 WL 383281, at *5 (noting that "[t]he present printed Form 21 explicitly states that the listed wage is "subject to verification").  However, it does not appear that either party in that case raised the argument raised by Defendant in this case, as we did not address the argument.

is specified, delivery must be made within a "reasonable time"); *see also Trust Co. v. Ins. Co.*, 199 N.C. 465, 154 S.E. 743 (1930) (holding that where a policyholder had the right to seek reinstatement of his policy, "[i]f no time for the performance of an obligation is agreed upon by the parties, then the law prescribes that the act must be performed within a reasonable time"); *Lewis v. Allred*, 249 N.C. 486, 106 S.E.2d 689 (1959) (holding that where a contract to sell land does not specify a closing date, "the law implies that it will be done within a reasonable time"). Following these principles, we hold that a party to a Form 21 agreement *which contains a verification provision but no provision regarding the time by which verification must be sought* cannot assert a right to seek verification once a "reasonable time" has passed.

In *Colt*, our Supreme Court stated that what constitutes a "reasonable time" is "generally a mixed question of law and fact, and, therefore, for the [fact-finder], but when the facts are simple and admitted, and only one inference can be drawn, it is a question of law." 190 N.C. at 174, 129 S.E. at 409. The Court, further stated that "[w]here the delay is so great as to support only one inference in the minds of all reasonable

persons, then it is clearly the duty of the [court] to declare it unreasonable as a matter of law." *Id.*

In the present case, the findings made by the Full Commission – the finder of fact in this case – and the record on appeal reveal that the parties entered into the Form 21 agreement; the Form 21 agreement was approved by the Full Commission in November 2007; Defendant tendered and Plaintiff accepted benefits based on the average weekly wage calculation in the Form 21 agreement; and Plaintiff did not file any request with the Full Commission seeking verification of the calculation of her average weekly wage until her attorney filed an Amended Form 18 in August 2011.

Generally, the determination as to what constitutes a reasonable time would be a question to be resolved by the Full Commission, as the finder of fact. However, in this case, we believe that Plaintiff waited an unreasonable amount of time to seek verification, as a matter of law. We believe that, under the facts of this case, by August 2011 – being more than three and one half years after the initial benefits had been tendered and accepted and the Form 21 agreement had been approved by the Full Commission - *neither party* had the right to seek verification. Accordingly, we hold that, with respect to any

claim for benefits arising out of the August 2006 accident, Plaintiff's average weekly wage is deemed to be $689.21 as agreed upon by the parties in their Form 21 agreement.

*C. Additional Medical Treatment*

Defendant further argues that the Commission erred in allowing Plaintiff's claim for additional benefits relating to her 2006 injury, contending that her claim for additional benefits was time-barred by either N.C. Gen. Stat. § 97-25.1 or N.C. Gen. Stat. § 97-47. We disagree.

N.C. Gen. Stat. § 97-25.1 imposes, in pertinent part, the following limitation upon a claimant's right to seek medical compensation:

> The right to medical compensation shall terminate two years after the employer's last payment of medical or indemnity compensation unless, prior to the expiration of this period, . . . the employee files with the Commission an application for additional medical compensation which is thereafter approved by the Commission[.]

N.C. Gen. Stat. § 97-25.1 (2011).

Moreover, although N.C. Gen. Stat. § 97-47 authorizes the Commission to increase the amount of workers' compensation benefits previously awarded to a claimant where there is "a change in condition" – which "[o]ur case law defines . . . as a condition occurring after a final award of compensation that is

'different from those existent when the award was made' [and that] results in a substantial change in the physical capacity to earn wages," *Pomeroy v. Tanner Masonry*, 151 N.C. App. 171, 179, 565 S.E.2d 209, 215 (2002) (quoting *Weaver v. Swedish Imports Maintenance, Inc.*, 319 N.C. 243, 247, 354 S.E.2d 477, 480 (1987)) – the Commission's authority to review an award for a change of condition is expressly limited by the statute's mandate that "no such review shall be made after two years from the date of the last payment of compensation pursuant to an award . . . ." N.C. Gen. Stat. § 97-47 (2011).

The issues thus are (1) the date on which Defendant made its last payment of medical or indemnity compensation on Plaintiff's behalf; and (2) whether Plaintiff filed her request for additional medical benefits within two years of that date.

1. Defendant's Last Medical or Indemnity Payment

The record reveals that Defendant made the last *indemnity* payment on 6 December 2007, which was more than two years prior to the date on which Plaintiff filed her claim for additional benefits, in November 2010, when she filed her Form 18M. With respect to Defendant's last medical payment, the Commission's opinion and award includes the following pertinent finding of fact and conclusion of law:

> [Finding of fact] 15. On January 20, 2009, Defendant last paid $556.80 to Armstrong & Armstrong, a rehabilitation company, for rehabilitative services in Plaintiff's claim.
>
> . . . .
>
> [Conclusion of law] 7. Rehabilitation services, including nurse case management services, are a form of "medical compensation" under the statutory definition of that term. See N.C. Gen. Stat. § 97-2(19).

Defendant does not dispute that it tendered a payment to Armstrong & Armstrong, Inc. (A&A) on 20 January 2009 on Plaintiff's behalf. Rather, Defendant contends that, given the nature of the services provided by A&A in connection with Plaintiff's claim, this payment did not constitute a payment of "medical compensation" within the meaning of the North Carolina Workers' Compensation Act, and that the last medical payment was in fact made on 11 November 2008, slightly more than two years before Plaintiff filed her Form 18M with the Commission. Defendant points to evidence presented before the Commission indicating that A&A merely provided medical case management services – as opposed to actual medical treatment or other services that could be properly characterized as "effecting a cure or giving relief" to Plaintiff's medical condition – and that, in the instant case, the "sole purpose" of A&A's

involvement was to schedule a single medical appointment on Plaintiff's behalf.

The relevant provision of our General Statutes defines "medical compensation" as follows:

> The term "medical compensation" means medical, surgical, hospital, nursing, and rehabilitative services, including, but not limited to, attendant care services prescribed by a health care provider authorized by the employer or subsequently by the Commission, vocational rehabilitation, and medicines, sick travel, and other treatment, including medical and surgical supplies, as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability[.]

N.C. Gen. Stat. § 97-2(19) (2011). We note our General Assembly's employment of the language "but not limited to" as indicative of its intent to set out a *non-exhaustive* list of what might constitute "rehabilitative services" in this context while affording some room for judicial augmentation. We also note that a narrow construction of this provision would undermine the oft-stated and axiomatic principle mandating that the workers' compensation provisions of our General Statutes be construed liberally in the claimant's favor. *Hollin v. Johnston County Council on Aging*, 181 N.C. App. 77, 84, 639 S.E.2d 88, 93 (2007) ("It is well established in North Carolina that the

Workers' Compensation Act should be liberally construed and that [w]here any reasonable relationship to employment exists, or employment is a contributory cause, the court is justified in upholding the award as arising out of employment."). Bearing these principles in mind, while every expense paid might not be considered "medical compensation" under N.C. Gen. Stat. § 97-2(19), we believe that the services provided by A&A in the present case do fall within the statute's ambit. While it is true that A&A did not provide "treatment" or "rehabilitative services" to Plaintiff in the conventional sense, its role as an administrative intermediary was necessary to ensure that Plaintiff received the treatment determined to be appropriate by the Commission in order to "effect a cure or give relief for" Plaintiff's compensable back injury. N.C. Gen. Stat. § 97-2(19). We, therefore, hold that Defendant last provided "medical compensation" for Plaintiff's 2006 injury when it tendered its payment to A&A on 20 January 2009.

2. Plaintiff's Request for Additional Benefits

The sole remaining issue is whether Plaintiff filed her request for additional benefits within two years of 20 January 2009. The Commission found that Plaintiff filed her Form 18M on 6 October 2010. However, Defendant states in its brief that

Plaintiff filed her Form 18M on 16 November 2010 and that it was received by the Commission on 23 November 2010. In either case, given our conclusion that Defendant's 20 January 2009 payment to A&A constituted the last medical payment, we hold that Plaintiff timely filed her claim for additional benefits. In light of our resolution of the issue concerning the Commission's modification of the Form 21 agreement, however, we modify the amount of temporary total disability due to Plaintiff for the periods of her disability from 2008-2010 as set forth in our Conclusion below.

## III. Conclusion

We vacate paragraph 1 of the Full Commission's 30 May 2013 opinion and award modifying the average weekly wage figure in the Form 21 agreement from $689.21 to $691.11; vacate paragraph 2 of the Full Commission's opinion and award directing Defendant to pay Plaintiff an additional $18.90 for her initial period of disability in 2006; and we reverse paragraph 4 of the Full Commission's opinion and award to the extent that it establishes the amount of Plaintiff's temporary total disability compensation award for her periods of disability between 2008 and 2010 at $460.76 per week, a figure based on the "modified" average weekly wage, and we modify this amount to $459.50 per

week, the figure agreed upon by the parties in the original Form 21 agreement.  We affirm the Full Commission's opinion and award in all other respects.

> AFFIRMED IN PART; VACATED IN PART; REVERSED AND MODIFIED IN PART.

> Judges STROUD and HUNTER, JR. concur.