BOBBY LEE BOND, EMPLOYEE, PLAINTIFF v. FOSTER MASONRY, INC., EMPLOYER; SELF-INSURED, (KEY RISK MANAGEMENT SERVICES), DEFENDANTS

No. COA99-696

(Filed 18 July 2000)

## 1. Workers' Compensation— average weekly wage—calculation

In a workers' compensation action involving a bricklayer who was a full-time employee even though he was not always required to work due to weather and demand, the Industrial Commission correctly chose the second rather than the fifth method of calculating his average weekly wage under N.C.G.S. § 97-2(5), but did not correctly use the second method in the calculation. The case was remanded for the Commission to determine the number of weeks plaintiff did not work and then to divide plaintiff's yearly earnings by the number of weeks remaining.

## 2. Workers' Compensation— earning capacity—wages from current employment

The Industrial Commission's findings as to earning capacity in a workers' compensation action were affirmed where competent evidence showed that plaintiff met his burden of showing that he was unable to earn the same wages as before the injury by showing his earnings from his current employment. Defendant presented no evidence that plaintiff could obtain employment earning more than this amount.

Appeal by defendants from an opinion and award entered 5 February 1999 by the North Carolina Industrial Commission. Heard in the Court of Appeals 27 March 2000.

*Walden & Walden, by Daniel S. Walden, for plaintiff-appellee.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Clayton M. Custer and Lawrence B. Somers, for defendant-appellants.*

HUNTER, Judge.

Foster Masonry, Inc. and Key Risk Management Services ("defendants"), appeals from an opinion and award of the North Carolina Industrial Commission ("Industrial Commission") wherein it awarded Bobby Lee Bond ("plaintiff"), workers' compensation benefits and calculated plaintiff's average weekly wage under the second method identified in N.C. Gen. Stat. § 97-2(5). We affirm in part and remand in order for the Full Industrial Commission ("Full Commission") to re-calculate plaintiff's "average weekly wage" under the second method in N.C. Gen. Stat. § 97-2(5).

The evidence indicates that plaintiff had been working for defendant as a brick mason for approximately three years when he was injured at work on 9 August 1996 due to the sudden giving away of his right arm. Plaintiff went to Kernersville Immediate Care on the day of his injury. He did not return to masonry work due to continued problems related to the injury; however, plaintiff began working at Direct Transport, Inc., on 3 February 1997, where his duties consisted of driving automobiles from various locations to Greensboro, North Carolina. Plaintiff was ultimately diagnosed with a right rotator cuff strain with brachial plexus strain on 10 March 1997. It was determined that plaintiff had reached maximum medical improvement on 28 April 1997, and he was assigned a permanent partial disability rating of twenty percent (20%) to the right upper extremity, with restric-

**BOND v. FOSTER MASONRY, INC.**

[139 N.C. App. 123 (2000)]

tions of no lifting over twenty-five pounds, no overhead work, and no repetitive use of the right arm.

Plaintiff filed a claim with the Industrial Commission, which defendant contested on the basis that plaintiff's injury was not an injury by accident, and therefore was not compensable under the North Carolina Workers' Compensation Act ("Act"). After a hearing on the matter, Deputy Commissioner William C. Bost entered an opinion and award on 16 February 1998, concluding as a matter of law that plaintiff's injury was compensable under the Act, and that

4. Plaintiff's average weekly wages on August 9, 1996 were $458.99, yielding a compensation rate of $306.01. G.S. 97-2(5); G.S. 97-29.

5. As a result of his August 9, 1996 injury by accident, plaintiff was totally disabled during the period August 9, 1996 through February 2, 1997. G.S. 97-29.

6. As a result of his August 9, 1996 injury by accident, plaintiff's earning capacity was permanently diminished from $458.99 per week to $234.15 per week effective February 3, 1997, thus entitling him to $149.01 per week until the end of the 300-week period. G.S. 97-30.

Commissioner Bost made the following award, in pertinent part:

1. For his temporary total disability compensation, defendant shall pay plaintiff temporary total disability compensation at the rate of $306.01 per week for the period August 9, 1996 through February 2, 1997. . . .

2. For his temporary partial and permanent partial disability compensation, defendant shall pay plaintiff temporary partial and permanent partial disability compensation at the rate of $149.91 per week starting February 3, 1997 and continuing until the end of the 300-week period starting August 9, 1996. . . .

Defendants appealed this opinion and award to the Full Commission. In its opinion and award of 5 February 1999, the Full Commission affirmed that plaintiff had suffered a compensable injury under the Act. As to plaintiff's compensation rate, it found:

11. Regarding his employment with defendant, plaintiff was a full time employee. Although he did not work when defendant

did not have contract jobs available, plaintiff was not a part time employee and his employment was not seasonal in nature.

12. In the prior Opinion and Award, plaintiff's pre-injury average weekly wage was calculated pursuant to an Industrial Commission Form 22 submitted by defendant. According to this Form 22, plaintiff worked only four (4) days in November 1995. However, as shown by Defendant's Answers to Plaintiff's Interrogatories, plaintiff worked thirty (30) days in November 1995. Therefore, plaintiff's pre-injury average weekly wage was not $458.99, as found in the prior Opinion and Award.

13. During the fifty-two (52) week period prior to plaintiff's 9 August 1996 injury by accident, he missed seven (7) or more consecutive days on more than one occasion. Therefore, the second method under G.S. § 97-2(5) of calculating his average weekly wage should be used.

14. Plaintiff earned $12,262.50 during the fifty-two (52) weeks preceding his injury. Over this period, plaintiff worked two-hundred and thirteen (213) days, yielding a daily wage rate of $57.57. When multiplied by seven (7), this daily rate yields an average weekly wage for plaintiff of $402.99 as of 9 August 1996, which yields a compensation rate of $268.67.

As a result of these findings, the Full Commission awarded plaintiff temporary total disability from 9 August 1996 through 2 February 1997 at the rate of $268.67 per week, and "partial disability compensation at the rate of two-thirds the difference between his average weekly wage of $402.99 and his post injury wage level of $190.00 for the period of 3 February 1997 through the present, subject to the statutory maximum period of three hundred (300) weeks." Defendants appeal.

[1] First, we note that our review of claims under the Act is limited. The North Carolina Supreme Court has stated that "the findings of fact made by the Commission are conclusive on appeal, . . . if supported by competent evidence . . . even though there is evidence which would support a finding to the contrary." *Hansel v. Sherman Textiles*, 304 N.C. 44, 49, 283 S.E.2d 101, 104 (1981). When this Court reviews a decision of the Full Commission, its inquiry is limited to: (1) whether there is competent evidence to support the Industrial Commission's findings of fact; and, (2) whether the findings of fact

support the conclusions of law and decision of the Industrial Commission. *Id.* Conclusions of law by the Industrial Commission are reviewable *de novo* by this Court. *Grantham v. R. G. Barry Corp.*, 127 N.C. App. 529, 491 S.E.2d 678 (1997), *disc. review denied*, 347 N.C. 671, 500 S.E.2d 86 (1998).

Under our N.C. Gen. Stat. § 97-2(5), average weekly wage is defined in pertinent part as

[1] earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury, . . . divided by 52; [2] but if the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. [3] Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained. [4] Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.

[5] But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

N.C. Gen. Stat. § 97-2(5) (1999). In its first assignment of error, defendants contend that the Full Commission erred in calculating plaintiff's average weekly wage under the second method in N.C. Gen. Stat. § 97-2(5), for a total of $402.99. Defendants argue that the appropriate method in this case is the fifth, or "exceptional reasons" method identified in N.C. Gen. Stat. § 97-2(5), whereby defendants urge that as a seasonal worker, plaintiff's yearly earnings should be

divided by 52 for an average weekly wage of $235.82. We note that this calculation is identical to the first method identified in the subject statute, which is used when the employee has worked 52 weeks in the year.

From our review of this statute and the prior holdings of this Court, it is clear that this statute establishes an order of preference for the calculation method to be used, and that the primary method, set forth in the first sentence, is to calculate the total wages of the employee for the fifty-two weeks of the year prior to the date of injury and to divide that sum by fifty-two. *Hensley v. Caswell Action Committee*, 296 N.C. 527, 533, 251 S.E.2d 399, 402 (1979). The final, or fifth method, as set forth in N.C. Gen. Stat. § 97-2(5), may not be used unless there has been a finding that unjust results would occur by using the previously enumerated methods. *See Wallace v. Music Shop, II, Inc.*, 11 N.C. App. 328, 331, 181 S.E.2d 237, 239 (1971). In *Derebery v. Pitt County Fire Marshall*, 318 N.C. 192, 347 S.E.2d 814 (1986), the North Carolina Supreme Court held that a worker's average weekly wage should be based upon the measure of the injured employee's earning capacity, noting that this must be determined by calculating " 'the amount which the injured employee would be earning were it not for the injury.' " *Id.* at 197, 347 S.E.2d at 817 (quoting N.C. Gen. Stat. § 97-2(5)).

Defendant contends that because plaintiff's work with his employer was sporadic, fairness to the employer requires the consideration of "both peak and slack periods" in calculating an employee's average weekly wage where the employment in question does not provide work in each of the fifty-two weeks in a year. *Joyner v. Oil Co.*, 266 N.C. 519, 522, 146 S.E.2d 447, 450 (1966). Therefore, defendant argues that plaintiff's earnings of $12,262.50 should be divided by fifty-two weeks, instead of the number of weeks he actually worked, to arrive at an average weekly wage of $235.82. We disagree.

In *Joyner v. Oil Co.*, 266 N.C. 519, 146 S.E.2d 447 (1966), the North Carolina Supreme Court considered a workers' compensation case where the employee was a relief truck driver who worked only on an as-needed basis during the fifty-two weeks prior to injury. The Court described the driver's employment as "inherently part-time and intermittent" and held it was "[un]fair[] to the employer . . . [not to] take into consideration both peak and slack periods," *id.* at 522, 146 S.E.2d at 450, in calculating average weekly wage because "it gives plaintiff the advantage of wages earned in . . . 'peak' . . . season with-

out taking into account the slack periods" during which he did not work. *Id.* at 521, 146 S.E.2d at 449. As a result, the Court held that the employee's average weekly wage was to be calculated under the "exceptional reasons," (fifth) method set forth in N.C. Gen. Stat. § 97-2(5) by taking the total wages earned during the twelve month period prior to injury and dividing that amount by fifty-two, representing the number of weeks in a year. *Id.* at 522, 146 S.E.2d at 450. As for the total wage calculation, the court reasoned that without the injury, the employee "would not be earning more than this sum in a normal year." *Id.* In a more recent case, *Barber v. Going West Transp., Inc.*, 134 N.C. App. 428, 517 S.E.2d 914 (1999), plaintiff was injured in 1996 while working as a driver for his employer, a provider of long haul transportation services specializing in produce shipment. The Full Commission had found that plaintiff had been continuously employed with employer since 1994, and that his employment was not seasonal. This Court reversed, stating:

> The parties stipulated in a Form 22 Wage Chart to the days and weeks plaintiff worked in 1995 and 1996 and to the earnings she received. Upon review of the Wage Chart, we note plaintiff did not work during 1995 in February, March, August, September or November, and reported working only eleven days in April, six days in July and seven days in December. In consequence of a fluctuating work schedule dependent in the main upon the produce season, plaintiff's job more properly qualified as "seasonal" rather than continuous employment.

*Id.* at 436, 517 S.E.2d at 921. As in *Joyner*, the court held that the employees weekly wage should be computed under the fifth method stated in N.C. Gen. Stat. § 97-2(5), i.e., by dividing his total earnings by fifty-two. Unlike *Barber* and *Joyner*, plaintiff in the present case was not a "seasonal" worker or a relief worker who filled in when a regular employee could not. Because work with defendant was dependent on demand and weather conditions, sometimes plaintiff was not required to work for days or weeks at a time; however, he was considered a full-time employee, not a seasonal one. A seasonal employee or relief worker does not work full-time every week in the year. To the contrary, it is entirely possible that as a brick mason, plaintiff could be required to work every week, full-time by his employer. Accordingly, we believe that plaintiff's earnings should not be divided by 52 under the fifth method in N.C. Gen. Stat. § 97-2(5), but rather, the second method in this statute is appropriate in the case at bar. However, our review indicates that the Full Commission did

not correctly use the second method in calculating plaintiff's average weekly wage.

The Full Commission computed plaintiff's daily wage rate by dividing plaintiff's total earnings by the number of days worked, then multiplied this "daily wage rate" by seven for an average weekly wage. First, we note that the second method of N.C. Gen. Stat. § 97-2(5) does not authorize using a "daily wage rate" and multiplying it by seven in calculating an average weekly wage. Additionally, no evidence indicates that plaintiff worked seven days a week, which would substantiate multiplying plaintiff's alleged "daily wage rate" by seven. "Under G.S. 97-2(e), 'average weekly wages' of the employee 'in the employment in which he was working at the time of the injury' must be related to *his earnings* rather than to his earning capacity." *Liles v. Electric Co.*, 244 N.C. 653, 657, 94 S.E.2d 790, 794 (1956) (emphasis in original). The computation used by the Full Commission indicates what plaintiff's *earning capacity* would be if he worked seven days a week for thirty-six weeks as a brick mason. This calculation is not provided for in the second method under N.C. Gen. Stat. § 97-2(5), and therefore was error. Accordingly, those portions of the Full Commission's opinion and award based on a calculation of plaintiff's average weekly wage at $402.99 are reversed. This case is remanded in order for the Full Commission to calculate plaintiff's average weekly wage as specified in the second method in N.C. Gen. Stat. § 97-2(5), which states in pertinent part:

> if the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted.

N.C. Gen. Stat. § 97-2(5). In accordance with this method, the Full Commission shall determine the number of weeks which plaintiff did not work ("time so lost"), and then divide plaintiff's yearly earnings by "the number of weeks remaining after the time so lost has been deducted." *Id.* The Full Commission may make any corresponding changes in the opinion and award based on this re-calculation, in accordance with this opinion.

[2] Last, defendant argues that plaintiff failed to meet his burden as to his present earning capacity which was determined to be $190.00 per week. Defendants urge that plaintiff could possibly earn more than this amount. This Court has held:

**BOND v. FOSTER MASONRY, INC.**

[139 N.C. App. 123 (2000)]

An employee injured in the course of his employment is disabled under the Act if the injury results in an "incapacity . . . to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C.G.S. § 97-2(9) (1991). Accordingly, disability as defined in the Act is the impairment of the injured employee's earning capacity rather than physical disablement.

The burden is on the employee to show that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment. The employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (citations omitted). Competent evidence indicates that plaintiff at bar met his burden under (4) identified above by showing his earnings through his employment with Direct Transport, Inc. These earnings, likewise, were competent evidence of plaintiff's earning capacity. Defendant presented no evidence that plaintiff could obtain employment earning more than this amount. Therefore, we hold that this argument is meritless.

In summary, we reverse and remand for re-calculation of plaintiff's average weekly wage, and any award based thereon. We affirm the Full Commission's findings as to plaintiff's earning capacity.

Reversed and remanded in part, affirmed in part.

Chief Judge EAGLES and Judge TIMMONS-GOODSON concur.