***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties entered into a Pre-Trial Agreement on April 9, 2002 which was incorporated into the evidence of record at the hearing before the Deputy Commissioner.
2. All parties are properly before the Commission and the Commission has jurisdiction of the parties and of the subject matter of this claim.
3. An employment relationship existed between plaintiff and defendants at all relevant times.
4. Liberty Mutual Insurance Company was the carrier on the risk.
5. Plaintiff's average weekly wage was $345.20, which yields a compensation rate of $230.14.
6. On February 16, 2001, plaintiff sustained an injury by accident to his back, buttocks and legs arising out of and in the course of his employment.
7. As of the Deputy Commissioner hearing, defendants had not paid medical billings for treatment rendered since plaintiff was released by Dr. Wade K. Grainger. Plaintiff's unpaid medical bills total $5,415.25 and were attached as Exhibit A to the Pre-Trial Agreement. Defendants have refused to authorize medical care for plaintiff since his release by Dr. Grainger.
8. Plaintiff last worked for defendant-employer on the date of the injury. Since that date, plaintiff has worked for Associates Recovery Investigations, Inc. (ARI) and 6 Pac Smokestack. Plaintiff worked for ARI from September 10, 2001 through October 26, 2001 and November 26, 2001 through November 30, 2001 and earned weekly gross wages of $270.00. Plaintiff worked for 6 Pac Smokestack beginning January 17, 2002 and continued to work there at the time the Pre-Trial Agreement was signed on April 9, 2002 and earned gross wages of $125.25 per week.
9. The parties stipulated the following evidence into the record at the hearing before the Deputy Commissioner:
a. Stipulated Exhibit A — Pre-Trial Agreement
b. Stipulated Exhibit B — medical records of Dr. Melody Swavely
c. Stipulated Exhibit C — medical records of Dr. Gordon I. Groh
d. Stipulated Exhibit D — medical records of Dr. Steward J. Harley
e. Stipulated Exhibit E — medical records of Melinda G. Halford, P.T.
f. Stipulated Exhibit F — medical records of Dr. Wade K. Grainger
g. Stipulated Exhibit G — medical records of Dr. Margaret O. Burke
h. Stipulated Exhibit H — medical records of Dr. Mark L. Moody
10. The following evidence was entered into the record at the hearing before the Deputy Commissioner:
a. Defendants's Exhibit 1 — United Parcel W-2 Form for 2001
b. Defendants's Exhibit 2 — Omega Investigations Report
11. The issues before the Commission are whether plaintiff's medical treatment following his release from Dr. Grainger is related to his compensable injury by accident, and if plaintiff is entitled to any additional medical benefits or other compensation.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACTS
1. At the time of the Deputy Commissioner hearing, plaintiff was 34 years old and a high school graduate. Plaintiff began working for defendant-employer in January 2001.
2. Prior to the compensable injury by accident, plaintiff was injured in an automobile accident on November 6, 1999 in South Carolina. In the emergency room following the accident, plaintiff complained of pain in his right shoulder, neck, and lower back and numbness in his left foot. X-rays were taken showing a normal cervical spine with cervical vertebral bodies in good alignment and intervertebral disc spaces normal. Plaintiff was diagnosed with a strain of the right shoulder, neck, and low back.
3. Plaintiff then spent eight months in a South Carolina county jail and work release camp for failure to pay child support. During that time, plaintiff did regular calisthenics and ran without unusual pain.
4. Following his release, plaintiff returned to North Carolina and worked as a machinist for three or four months in the fall of 2000.
5. Plaintiff sought treatment by Dr. Stewart J. Harley for continuing pain from the car accident. Dr. Harley first saw plaintiff on October 17, 2000. Plaintiff complained of constant pain in his lower back, which he had never had prior to the car accident.
6. Dr. Harley ordered an MRI and found a degenerative disc at L5-S1. Dr. Harley felt the car accident did not cause degenerative disc disease but may have caused lower back pain.
7. Dr. Harley did not assign plaintiff restrictions or take plaintiff out of work. Dr. Harley felt plaintiff would experience improvement over time with no permanent impairment. Dr. Harley instructed plaintiff on methods of proper lifting.
8. In January 2001, plaintiff began work for defendant-employer. Plaintiff picked up and moved 30-50 pound boxes on the dock and on the truck line. Plaintiff testified he felt soreness from this work but was always ready for work the next day.
9. On February 16, 2001, plaintiff picked up a box weighing approximately 100 pounds and stepping back, caught his heel in a pallet and twisted his back. He felt an immediate knife-like pain in his testicles that almost knocked him to the ground. He could not continue work and was taken to the emergency room and was referred to defendants' physician, Dr. Wade K. Grainger.
10. On February 19, 2001, plaintiff treated with Dr. Grainger for low back pain. Dr. Grainger kept plaintiff out of work that day, but felt plaintiff was able to return to work the next day with restrictions of no prolonged standing, sitting, or walking. Plaintiff was told to avoid frequent bending and stooping and was given the restriction of no lifting over 10 pounds. Dr. Grainger referred plaintiff to physical therapy.
11. Plaintiff remained out of work because defendants had no light duty work available.
12. Dr. Grainger indicated on his treatment notes from each visit that plaintiff was being treated for a work related injury and felt that plaintiff's injury by accident aggravated plaintiff's pre-existing back problems.
13. Defendants filed a Form 60, Admission of Plaintiff's Right to Compensation, on March 1, 2001 and have paid compensation to plaintiff on a continuing basis.
14. Dr. Grainger saw plaintiff on March 2, 2001 and again released plaintiff to return to work with the same restrictions. Defendants had no light duty position available, so plaintiff continued with physical therapy on a daily basis.
15. Plaintiff continued to experience low back pain. Dr. Grainger ordered an MRI which indicated plaintiff had a small central disc protrusion at L5-S1 and Dr. Grainger felt it was difficult to tell if this was what was causing plaintiff's pain. Dr. Grainger felt the protrusion was consistent with the description of plaintiff's injury from his auto accident.
16. Dr. Grainger testified that plaintiff's back pain would be an ongoing problem for him. He felt plaintiff would be unable to continue work that required heavy lifting, but also believed plaintiff would have pain-free periods where he could do some manual labor.
17. Plaintiff saw Dr. Grainger on March 16, 2001 at which time Dr. Grainger felt plaintiff was at maximum medical improvement. Dr. Grainger stated he felt plaintiff could have been referred to a pain specialist for his pain, but that he did not make any referral.
18. Dr. Grainger felt plaintiff was not exaggerating his pain and found plaintiff retained a permanent functional impairment rating of 10% to the back. Although Dr. Grainger believed some permanent impairment was caused by the compensable injury by accident, he was unable to apportion the rating between the compensable injury and the motor vehicle accident.
19. Dr. Grainger saw plaintiff again on May 25, 2001 at defendants' request. Plaintiff complained of low back pain with muscle spasm, pain with bending, lifting, prolonged sitting or standing. Dr. Grainger felt plaintiff's condition was unchanged and plaintiff's pain was chronic. Dr. Grainger did not recommend further treatment or evaluation.
20. Plaintiff saw Dr. Margaret O. Burke, a specialist in physical medicine and rehabilitation, on August 9, 2001 for complaints of back and leg pain. Dr. Burke felt plaintiff's complaints of pain were legitimate and felt plaintiff's history was consistent with his symptoms and complaints. Plaintiff gave a history of having been in an automobile accident in 1999 and having been injured at work, causing a recurrence of pain, in February of 2001.
21. Dr. Burke's impression of plaintiff's injuries was that he had an acute left sacroiliac sprain, secondary to bending and twisting.
22. Dr. Burke felt plaintiff's injury at work caused his lumbar sprain which was overlapping with sacroiliac sprain.
23. Dr. Burke saw plaintiff again on September 17, 2001 and felt plaintiff's pain might be coming from his L2-3 facet joint. Dr. Burke noted that plaintiff's sacroiliac sprain had not resolved, but there was some improvement.
24. Dr. Burke felt plaintiff could work because he could frequently change positions. Dr. Burke reviewed plaintiff's MRIs and did not assign plaintiff any restrictions on activities. Dr. Burke felt plaintiff had an acute strain.
25. Plaintiff treated with Dr. Mark L. Moody, an orthopedic surgeon, on December 11, 2001 with complaints of lower back pain, pain in his left buttock and tingling in his left leg. Dr. Moody felt plaintiff had acute left sacroiliac sprain secondary to bending and twisting and probably secondary to a degenerative disc at L5-S1.
26. Plaintiff gave Dr. Moody a history of being in an automobile accident and having been injured at work in February 2001. Dr. Moody reviewed both MRIs and found no significant change in the central disc. Dr. Moody believed the pain that plaintiff was describing was genuine.
27. It was Dr. Moody's opinion, and the Commission so finds, that plaintiff's injury by accident aggravated his pre-existing back condition. Dr. Moody ordered a CT scan and found no evidence of significant nerve pressure that would account for plaintiff's buttock pain. Dr. Moody did not recommend surgery, but felt plaintiff should continue with conservative treatment.
28. Dr. Moody felt plaintiff could participate in gainful employment and did not assign plaintiff any specific restrictions. Dr. Moody stated if he had assigned specific restrictions, he would have told plaintiff to avoid heavy lifting over 75 pounds and to avoid a job requiring repetitive bending and twisting activities. Dr. Moody observed no change in plaintiff's MRIs based upon the reports provided him.
29. Plaintiff worked for Associates Recovery Investigations, Inc. (ARI) from September 7, 2001 through October 26, 2001 and November 26, 2001 through November 30, 2001. Plaintiff earned gross wages of $270.00 per week, for a total of $2,160.00. Plaintiff worked full time until the person for whom he was filling in returned to work and at that time ARI did not have work for plaintiff.
30. Plaintiff worked for 6 Pac Smokestack from January 17, 2002 until April 9, 2002 and earned weekly gross wages of $125.25, for a total of $1,002.00. Plaintiff continued to work for 6 Pac Smokestack as of the hearing before the Deputy Commissioner. Plaintiff worked approximately 20 hours per week. His duties consisted of running the cash register and stocking cigarettes. He could not do any duties that required lifting heavier objects.
31. Following the Deputy Commissioner hearing, the parties on April 9, 2002 filed a Form 26 Agreement that reduced plaintiff's weekly compensation rate to $100.00: $146.64 for temporary partial disability, with $46.64 withheld to be applied to the overpayment plaintiff received while he was earning wages at ARI and 6 Pac Smokestack while being paid disability compensation.
32. Upon reaching maximum medical improvement, plaintiff retained some work restrictions and partial disability due to his compensable injury by accident which significantly aggravated his pre-existing back condition. Plaintiff's wages since September 7, 2001 were less than he was earning at the time of his compensable injury by accident and plaintiff's decreased ability to earn wages is due to his disability resulting from the admittedly compensable injury by accident.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On February 16, 2001, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendants. N.C. Gen. Stat. § 97-2(6).
2. Because defendants admitted compensability of plaintiff's injury by accident by filing a Form 60, there is no presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Sims v. Charmes/Arby's Roast Beef, 142 N.C. App. 154,542 S.E.2d 277, disc. rev. denied, 353 N.C. 729, 550 S.E.2d 782 (2001).
3. Plaintiff met his burden of proving disability after September 7, 2001 by producing evidence that after a reasonable job search, he obtained other employment at wages less than those earned prior to the compensable injury. Larramore v. Richardson Sports Ltd. Partners,141 N.C. App. 250, 540 S.E.2d 768 (2000), aff'd per curiam, 353 N.C. 520,546 S.E.2d 87 (2001); Bond v. Foster Masonry, Inc., 139 N.C. App. 123,532 S.E.2d 583 (2000).
4. As the result of the compensable injury by accident, plaintiff was disabled and entitled to compensation for total disability at the rate of $230.14 per week for the period beginning March 20, 2001 through September 7, 2001. N.C. Gen. Stat. § 97-29. This amount of compensation has been paid by defendants.
5. Plaintiff is entitled to partial disability benefits at the rate of two-thirds of the difference between his average weekly wages before the injury and the average weekly wages which he was able to earn thereafter beginning September 8, 2001 for 300 weeks from the date of injury. N.C. Gen. Stat. § 97-30. Payment of this compensation is subject to the Form 26 Agreement that reduced plaintiff's benefits until the overpayment of compensation while plaintiff was earning wages had been repaid.
6. As a result of the compensable injury by accident, plaintiff is entitled to have defendants pay for all medical treatment which tends to effect a cure, give relief or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25, — 25.1.
 ***********
Based on the foregoing findings of fact and conclusions of law the Full Commission enters the following:
 AWARD
1. Defendants shall pay partial disability compensation beginning September 8, 2001 and continuing for 300 weeks from the date of injury or until plaintiff earns the same wages as he earned on February 16, 2001. Pursuant to the Form 26 filed, defendants may withhold $46.64 to be applied to the overpayment plaintiff received while he was working at ARI and 6 Pac Smokestack until the overpayment has been satisfied. Those amounts which have accrued shall be paid in a lump sum, subject to the attorney's fee approved below.
2. Defendants shall pay for all related medical treatment that is reasonably necessary to effect a cure, provide relief or lessen the period of plaintiff's disability. The approved medical compensation includes treatment by Drs. Burke, Moody, Grainger and Harley.
3. An attorney's fee in the amount of 25% of the benefits being paid to plaintiff is hereby approved for plaintiff's counsel and shall be deducted and paid directly to plaintiff's counsel.
5. Defendants shall pay the costs due the Commission.
This the ___ day of August 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/kjd