* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission that has jurisdiction over the parties and subject matter.
2. All parties have been correctly designated and there is no question as to the misjoinder or nonjoinder of parties.
3. The parties are subject to and bound by the North Carolina Workers Compensation Act ("Act").
4. At all times relevant hereto, an employment relationship existed between plaintiff and defendant-employer.
5. ESIS is the proper insurance carrier for this claim.
6. At the hearing before the Deputy Commissioner, the parties submitted a Notebook of Various Stipulated Documents, which was admitted into the record, and marked as Stipulated Exhibit (2).
7. The issues to be determined are as follows:
 a. Whether plaintiff sustained a compensable injury by accident to her back on March 14, 2004, and if so, to what indemnity and medical benefits, if any, is she entitled;
 b. Whether plaintiff's per diem living expenses paid by defendant-employer should be considered when calculating her average weekly wage and compensation rate; and
 c. Whether plaintiff is entitled to attorney's fees as a sanction pursuant to N.C. Gen. Stat. § 97-88.1.
* * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was forty-four years of age. Plaintiff had received a General Education Development (GED) certificate and attended a technical school for a few months. In October 2000, plaintiff began working for defendant-employer as a contract laborer in various power plants.
2. Initially, plaintiff reported that the incident giving rise to this claim occurred on March 14, 2004. However, between that initial period and the date of hearing before the Deputy Commissioner, plaintiff was able to correct this reported date through verifying that the week day on which the incident occurred was a Thursday, which was March 18, 2004, and not March 14, 2004.
3. On March 18, 2004, plaintiff was working under an employment contract with defendant-employer at the McGuire Nuclear Station, which was undergoing a routine shutdown. Plaintiff was assisting coworkers, Mr. Robin Goings and Mr. James Henry Inman, who were replacing a large snubber. Plaintiff's work mainly involved bringing tools to her coworkers as requested. On this date, Mr. Goings was on a scaffold and asked plaintiff to hand him a large pipe wrench. In order for Mr. Goings to grab the wrench from above, plaintiff lifted it and held it above her head. According to plaintiff's testimony, Mr. Goings experienced difficulty grabbing the wrench, which resulted in her having to strain to continue holding it above her head. Plaintiff further testified that during this process, she experienced the immediate onset of pain in her lower back.
4. Dr. Marcia Hardin, a chiropractor, testified that plaintiff had been receiving chiropractic and acupuncture treatment on a regular basis since March 2003. Dr. Hardin further testified that on March 24, 2004, while treating plaintiff at her regularly scheduled visit, plaintiff reported an increase in back pain. Plaintiff further reported experiencing low back pain on the right side and discomfort down both legs on the lateral side of her thighs from the buttock and low back region. Dr. Hardin removed plaintiff from work until March 29, 2004. There is no reference to a workplace injury in Dr. Hardin's records from March 24, 2004. Plaintiff explained that at the time of her March 24, 2004, examination, she hoped that she had only experienced a muscle strain that would resolve, and that she would not have to inform anyone of her workplace injury.
5. On March 26, 2004, plaintiff presented to Dr. Kasic, a colleague of Dr. Hardin. Medical records from this date do reflect that plaintiff reported her belief that her severe lower back and leg pain were the result of a work-related injury. Medical records from March 29, 2004, also reflect that plaintiff informed Dr. Hardin of a workplace incident.
6. On the issue of reporting her injury, plaintiff testified that she did not initially report it to her co-workers or supervisor due to fear that she would no longer receive work assignments from defendant-employer. However, plaintiff did admit that she had never been informed by any representative of defendant-employer that making a workers' compensation claim would result in her not receiving work assignments. Mr. Michael Henline, plaintiff's supervisor, testified that he encourages all of his employees to report all workplace injuries and that plaintiff had no reason to fear repercussions due to filing a workers' compensation claim.
7. As of March 30, 2004, defendants had notice of plaintiff's injury since she gave a recorded statement to defendants regarding the workplace incident she contends resulted in her back injury. Mr. Goings also gave a recorded statement that corroborates plaintiff's statement and hearing testimony about her having handed up the heavy wrench to him. At their depositions, Mr. Goings and Mr. Inman further confirmed that plaintiff did pull a large pipe wrench out from under the scaffolding on March 18, 2004, but partially contradicted her testimony that she lifted it herself. Mr. Inman and Mr. Goings further testified that plaintiff did not indicate to them that she had injured her back at that time and that she did not appear to be in pain. Additionally, both Mr. Inman and Mr. Goings testified that neither of them would be afraid to report a workplace injury.
8. Plaintiff and Mr. Henline testified that she contacted him via voicemail on March 24, 2004, and March 25, 2004. Plaintiff contends that she reported a work-related injury in these voicemails, whereas Mr. Henline contends that she merely reported having back pain. Plaintiff's testimony establishes by these dates that her pain and other symptoms had superseded any apprehension she had regarding the reporting of a workplace injury. Additionally, having not received a response from defendant-employer, plaintiff contends that approximately two days after her second voicemail to Mr. Henline, she contacted the acting project manager and supervisor for Atlantic Services, Inc., Mr. Kenny Simmons, and informed him that she had injured her back at work while lifting up a heavy pipe wrench.
9. Upon plaintiff's report of a workplace injury, Dr. Hardin performed diagnostic studies, which revealed a grade 1, L5 spondylolisthesis, a narrowing of the L5-S1 disc space, flattening of the lumbar curve and mild to moderate rotation in the mid to lower cervical region. Dr. Hardin continued to medically excuse plaintiff from work until April 12, 2004. On April 8, 2004, Dr. Hardin ordered an ultrasound to verify her objective findings and plaintiff's subjective complaints. According to Dr. Hardin, this study indicated that plaintiff had a mild to moderate inflammation at the bilateral L4 to S1 levels within the facet joints and associated spinal erector musculature with greater inflammation at the L5 level. Additionally, Dr. Hardin found slight inflammation within plaintiff's left sacroiliac joint.
10. Based upon the totality of the lay and medical evidence of record, including the fact that as of the date of the incident giving rise to this claim plaintiff's husband was not working, thereby making her the sole source of family income, the Full Commission finds plaintiff's testimony and statements regarding the circumstances of her back injury and the results thereof to be credible. That plaintiff may have had a misconception regarding the consequences of filing a workers' compensation claim does not detract from her overall credibility nor does the fact that at first, she incorrectly identified the date of her injury.
11. Dr. Hardin has opined that the results of the April 8, 2004, ultrasound were consistent with an injury or trauma to that area of plaintiff's spine. Dr. Hardin has also opined, to a reasonable degree of medical certainty, that the conditions noted in the results of the ultrasound were the result of plaintiff's March 18, 2004, work-related injury.
12. On April 14, 2004, Dr. Hardin referred plaintiff to Dr. Gisele Girault, a pain specialist, due to her ongoing symptoms. Dr. Girault first examined plaintiff on April 15, 2004, and recommended a SI joint injection, continued chiropractic adjustments and exercises. Dr. Girault also referred plaintiff for aquatic therapy, which she underwent from April 22, 2004, until June 18, 2004. On May 5, 2004, Dr. Girault performed the SI injection that provided some, but not total relief from plaintiff's pain.
13. Dr. Hardin also referred plaintiff to Dr. William Lehman, an orthopedic surgeon. As part of this referral, Dr. Hardin wrote to Dr. Lehman informing him that plaintiff's baseline pain and musculoskeletal symptoms had been stabilized at the time of her March 18, 2004, injury. On June 5, 2004, plaintiff first presented to Dr. Lehman who noted her work-related injury, and that plaintiff's report of current pain was so severe that it made her nauseated. Dr. Lehman's physical examination revealed definite tenderness in plaintiff's lower back that extended into the back of her pelvis, into the buttock area and into her legs. In addition, Dr. Lehman found some tenderness in the sacroiliac joint, a large joint on the right side of the back of the pelvis.
14. On the issue of causation, Dr. Lehman testified that plaintiff's prior x-ray and MRI showed a mild L5-S1 listhesis affecting the right L5 nerve root that, in his opinion, was causally related to her March 18, 2004, injury by accident. Dr. Lehman further testified that the MRI showed a slippage of the L5 vertebra on the S1 vertebra, or spondylosisthesis, as well as bulging of the disc that appeared to be pressing to some extent on the right L5 nerve root. The Full Commission finds the totality of Dr. Lehman's testimony supports his opinions that plaintiff's March 18, 2004, injury materially aggravated her pre-existing back condition. For plaintiff's ongoing symptoms, Dr. Lehman has recommended physical therapy, chiropractic treatment and a right L5 selective nerve root block as well as pain medication.
15. The greater weight of the credible evidence indicates and the Full Commission finds that plaintiff sustained her back injury during a cognizable time period and that it was not the result of a gradual deterioration.
16. Therefore, the Full Commission finds that on March 18, 2004, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer in the form of a specific traumatic incident of the work assigned. As a result of her March 18, 2004, injury by accident, plaintiff sustained a material aggravation of her preexisting, non-disabling back condition.
17. Employment records show that plaintiff had to apply for each contract job to which she was assigned since she was not a permanent, full time employee of defendant-employer. These records also indicate that plaintiff worked for defendant-employer from October 15, 2000, to November 19, 2000; from March 4, 2001, to May 20, 2001; from July 8, 2001, to December 16, 2001; from January 6, 2001, to December 14, 2003; and from February 14, 2004, until April 17, 2004. However, the Full Commission finds that the overall nature of plaintiff's employment with defendant-employer was not seasonal as defendants contend given that plaintiff could conceivably work every week. Plaintiff worked for defendant-employer since October 15, 2000, and worked the majority of the fifty-two weeks prior to her injury by accident, but had lost more than seven consecutive calendar days at one or more times during such period.
18. Plaintiff's employment agreements with defendant-employer indicate that she was to be compensated at a base hourly rate, at an overtime rate when applicable, a per diem for up to forty hours per week and compensation for travel/mileage. The per diem policy for hourly employees ran from Monday through Sunday and applied when an employee's primary residence was fifty miles or greater from the jobsite. The payment for per diem was issued along with the employee's regular paycheck. Plaintiff was issued certificates of per diem eligibility since she lived more than fifty miles (50) from her job sites with defendant-employer.
19. As for the specific monetary amounts, plaintiff's base pay was $19.00 per hour, with time and a half for overtime, and per diem expenses of $11.37 per hour, based upon the fact that she lived more than fifty miles from the jobsite. Plaintiff's final employment agreement with defendant-employer had a commencement date of February 23, 2004, at an hourly rate of $19.00, with her overtime rate being $28.50, her per diem rate being $65.00 per day, and her travel allowance of $200.00. Based upon the totality of the evidence of record, the Full Commission finds that plaintiff's overtime, travel expenses and per diem expenses were all specified allowances in her wage contract paid in lieu of wages.
20. Although plaintiff correctly contends that the second method under N.C. Gen. Stat. § 97-2(5) should be used to calculate her average weekly wage, that method requires calculating an employee's wages for the fifty-two week period prior to the injury, not the fifty-two week period preceding the first date of disability. During the fifty-two week period preceding plaintiff's March 18, 2004, injury by accident, plaintiff earned $33,354.10. This amount was arrived at by adding plaintiff's gross wages, as indicated on her employment records from March 16, 2003, to March 14, 2004. During that period, plaintiff worked 43 and 3/7ths, or 43.43 weeks. Then, dividing plaintiff's wages by the number of weeks or parts thereof worked ($33,354.10/43.43) results in an average weekly wage for plaintiff on March 18, 2004, of $767.00, which yields a compensation rate of $512.26.
21. At the hearing before the Deputy Commissioner, plaintiff testified that she returned to work in an office job within her restrictions on November 15, 2004, and that she continues to work in that capacity. In this position, plaintiff earns $12.00 per hour for forty hours per week. Plaintiff is not paid overtime, per diem or travel expenses. Plaintiff testified that prior to her injury by accident, she earned approximately $1,100.00 a week and that she now earns only $480.00 per week.
22. As a result of her March 18, 2004, injury by accident, plaintiff has been unable to earn any wages in her former position with defendant-employer or in any other employment for the period of April 17, 2004, the last day she worked for defendant-employer, through November 14, 2004, when she began working in her office job.
23. As a result of her March 18, 2005, injury by accident, plaintiff has only been able to earn reduced wages for the period of November 15, 2004, through the present.
24. Defendants' defense of this matter and actions in relation to plaintiff's work-related injury are not without reason and are not indicative of stubborn, unfounded litigiousness.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order to establish a compensable injury to the back, the employee must prove that the disabling back injury arose out of and in the course of the employment and was the direct result of either an accident or a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6); Richards v. Town ofValdese, 92 N.C. App. 222, 224, 374 S.E.2d 116, 118 (1988),disc. review denied, 324 N.C. 337, 378 S.E.2d 799 (1989).
2. Under the specific traumatic incident theory, plaintiff must prove that the injury occurred at a judicially cognizable time, although not necessarily at a specific hour or day. Fish v.Steelcase, Inc., 116 N.C. App. 703, 707, 449 S.E.2d 233, 237
(1994), cert. denied, 339 N.C. 737, 454 S.E.2d 650 (1995);Richards v. Town of Valdese, supra. Judicially cognizable does not mean that the definition of specific traumatic incident is limited to an instantaneous occurrence. But events which occur contemporaneously, during a cognizable time period, and which cause a back injury, do fit the definition of specific traumatic incident. Fish v. Steelcase, Inc., supra; Richards v. Town ofValdese, supra at 225, 347 S.E.2d at 118-119. Under the specific traumatic incident theory, plaintiff is not required to prove that the injury arose from an unusual occurrence or departure from ordinary duties. Fish v. Steelcase, Inc., supra; Bradley v.E.B. Sportswear, Inc., 77 N.C. App. 450, 335 S.E.2d 52 (1985).
3. On March 18, 2004, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer in the form of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
4. The overall nature of plaintiff's employment with defendant-employer was not seasonal given that she could conceivably work every week. See, e.g., Bond v. Foster Masonry,139 N.C. App. 123, 532 S.E.2d 583 (2000). Because plaintiff did not work for defendant-employer for the entire fifty-two week period prior to her injury, the first method outlined in N.C. Gen. Stat. § 97-2(5) for calculating plaintiff's average weekly wage cannot be used. However, because the second method prescribed in the Act most nearly approximates what plaintiff would be making but for her injury by accident, it can and must be used and would result in a wage that is fair to both parties. N.C. Gen. Stat. § 97-2(5).
5. Based upon the totality of the evidence of record, plaintiff's overtime, travel expenses and per diem expenses were all specified allowances in her wage contract paid in lieu of wages. During the fifty-two week period preceding plaintiff's March 18, 2004, injury by accident, plaintiff earned $33,354.10. During that same period, plaintiff worked 43 and 3/7ths, or 43.43 weeks. Therefore, pursuant to the second method of calculating an average weekly wage under the Act, plaintiff's average weekly wage on March 18, 2004, was $768.00, which yields a compensation rate of $512.26. Id.
6. As a result of her March 18, 2004, injury by accident, plaintiff is entitled to have defendants pay her total disability compensation at the rate of $512.26 per week for the period of April 17, 2004, through November 14, 2004. N.C. Gen. Stat. §97-29.
7. As a result of her March 18, 2004, injury by accident, plaintiff is entitled to have defendants pay her temporary partial disability benefits at a weekly compensation rate of two-thirds the difference between her pre-injury average weekly wage and the average weekly wage that she earned thereafter continuing until such time as plaintiff's earnings meet or exceed her pre-injury wage, but not to exceed 300 weeks from the date of injury. N.C. Gen. Stat. § 97-30.
8. As a result of her March 18, 2005, injury by accident, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred, including the outstanding medical bills in the amount of $827.00, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. As a result of her March 18, 2004, injury by accident, defendants shall pay to plaintiff total disability compensation at the rate of $512.26 per week for the period of April 17, 2004, through November 14, 2004. This compensation having accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved herein.
2. As a result of her March 18, 2004, injury by accident, defendants shall pay to plaintiff temporary partial disability benefits at a weekly compensation rate of two-thirds the difference between her pre-injury average weekly wage and the average weekly wage that she earned thereafter. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum and is subject to the attorney's fee approved herein.
3. Defendant shall pay all related medical expenses incurred or to be incurred by plaintiff as a result of her March 18, 2004, injury by accident, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
5. Since Defendants' defense of this matter is not without reason, and is not indicative of stubborn, unfounded litigiousness, plaintiff is not entitled to an award of attorney's fees as a sanction pursuant to N.C. Gen. Stat. §97-88.1.
6. Defendants shall pay the costs.
This the 28th day of April 2006.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________________ LAURA KRANIFIELD MAVRETIC COMMISSIONER