***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications, the Opinion and Award of Deputy Commissioner Houser.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The Industrial Commission has jurisdiction over the parties and of the subject matter, and an employee-employer relationship existed between plaintiff and defendant-employer.
3. All parties have been correctly designated, and there are no questions as to misjoinder or nonjoinder of the parties.
4. Defendant-employer is self-insured.
5. Plaintiff sustained a compensable right knee injury on February 10, 2004.
6. Defendant accepted plaintiff's claim for the right knee injury and have paid ongoing total disability compensation at the rate of $87.52 per week.
7. The issues before the Full Commission on appeal are whether plaintiff is entitled to additional medical compensation as the result of her admittedly compensable injury by accident or whether plaintiff's ongoing total disability compensation should be suspended. Also at issue is how to correctly determine plaintiff's average weekly wage and whether plaintiff is entitled to sanctions in the form of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations and evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 54 years old. She is a high school graduate. *Page 3 
2. Plaintiff was employed by defendant-employer as a part-time sales associate cashier. On February 10, 2004, plaintiff sustained an admittedly compensable right knee injury by accident. Defendant accepted this claim as compensable through the filing of an Industrial Commission Form 60.
3. An Industrial Commission Form 22 Wage Chart was stipulated to by the parties. The Form 22 covered the period plaintiff worked for defendant-employer prior to her admittedly compensable injury by accident. The first day identified on the Form 22 is July 10, 2003 and the last day identified is February 10, 2004. The total weeks covered is 30.71.
4. The Form 22 also indicated that plaintiff did not work for the periods of September 27, 2003 through October 6, 2003; from December 14, 2003 through December 21, 2003; from January 3, 2004 through January 12, 2004 and finally from January 24, 2004 through February 1, 2004. Therefore, during the 30.71 weeks covered in the Form 22, plaintiff did not work a total of 5.28 weeks, leaving 25.28 weeks during which she earned wages prior to her injury by accident.
5. In 2003, plaintiff earned $3,689.72 and in 2004, she earned $853.59. Therefore, during the 25.28 weeks plaintiff worked for defendant-employer prior to her injury, she earned a total of $4,543.31.
6. The duration of plaintiff's employment with defendant-employer prior to her February 10, 2004 injury by accident was less than a full year, therefore neither the first nor second methods outlined in the Act for the calculation of her average weekly wage can be used. The third method is therefore appropriate, as it results in a rate that is fair and just to all of the parties. *Page 4 
7. Pursuant to the third method as outlined in N.C. Gen. Stat. § 97-2(5), dividing plaintiff's wages by the number of weeks she worked prior to her injury by accident, results in an average weekly wage of $179.72, yielding a compensation rate of $119.82.
8. On April 1, 2004, plaintiff was examined by Dr. Clifford Wheeless, who diagnosed her as having sustained a medial meniscus right knee tear as the result of her February 10, 2004 injury by accident. Dr. Wheeless initially provided conservative treatment, including physical therapy.
9. On August 9, 2004, Dr. Wheeless recommended a surgical repair of plaintiff's right knee. On August 12, 2004, Dr. Wheeless performed arthroscopic surgery, during which he discovered condyle injuries of the anterior face of the medial femoral chondral. The surgery consisted of a repair of the posterior femoral of the medial meniscus of plaintiff's right knee.
10. Following surgery, plaintiff continued treating with Dr. Wheeless for her right knee. Dr. Wheeless also treated plaintiff for unrelated left knee condition and lumbar spine problems.
11. On March 31, 2006, Dr. Wheeless recommended further surgery for plaintiff's right knee in the form of a partial knee replacement, and requested authorization from defendant for this procedure on May 11, 2006. Defendant did not authorize this recommended treatment.
12. On July 12, 2006, due to the further deterioration of plaintiff's right knee and the chronic nature and severity of her right knee pain, Dr. Wheeless recommended a total knee replacement. Dr. Wheeless stated that the fall "incited the right knee to degrade faster."
13. On February 13, 2007, defendant sought a second opinion from Dr. John Chiavetta. Dr. Chiavetta recommended a cartilage preserving procedure versus a total knee replacement at that time. *Page 5 
14. As of April 21, 2007, Dr. Wheeless continued to recommend a total knee replacement.
15. On January 10, 2008, Dr. John Kelley examined plaintiff for a third opinion. Dr. Kelley discussed different treatment options with plaintiff as opposed to surgery and noted that a cortisone injection was a possible treatment option. Dr. Kelley recommended that plaintiff return in one year for an additional evaluation.
16. Dr. Wheeless continues to recommend the total right knee replacement for plaintiff and has medically excused her from all work.
17. On June 30, 2009, Dr. Chiavetta again evaluated plaintiff. Following the evaluation on that date, Dr. Chiavetta altered his initial treatment opinion and now agrees with the total knee replacement recommendation.
18. Based upon the totality of the evidence of record, the Full Commission gives greater weight to the testimony and opinions of Dr. Wheeless, as he has been plaintiff's primary treating physician, and finds Dr. Chiavetta's supporting opinion to be credible.
19. Given the filing of their Industrial Commission Form 60 and the fact that the current condition at issue affects the same body part listed on that form, plaintiff's right knee condition is presumed causally related to the compensable injury by accident. Defendant failed to rebut this presumption by showing that plaintiff's need for a total right knee replacement is not causally related to her February 10, 2004 injury by accident.
20. Plaintiff's need for a total right knee replacement is the direct and natural result of and causally related to her February 10, 2004 admittedly compensable injury by accident.
21. Based upon the totality of the credible vocational and medical evidence of record, and as the result of her admittedly compensable February 10, 2004 injury by accident and *Page 6 
causally related right knee condition and need for a total right knee replacement, plaintiff has been unable to earn any wages in her former employment with defendant-employer or in any other employment through the present and continuing.
22. Defendant's defense of this matter was unreasonable and indicative of stubborn, unfounded litigiousness. Defendant refused to authorize the total knee replacement initially recommended on July 12, 2006, by Dr. Wheeless, the treating physician, and continued to refuse to authorize surgery after Dr. Chiavetta's second deposition taken in July 2009, in which he concurred that surgery was plaintiff's only treatment option. Additionally, defendant refused to provide any basis for the calculation of plaintiff's average weekly wage used by defendant.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On February 10, 2004, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer to her right knee. N.C. Gen. Stat. § 97-2(6).
2. The third method within the Act was used for the calculation of plaintiff's average weekly wage, due to the duration of her employment with defendant-employer prior to her February 10, 2004 injury by accident. N.C. Gen. Stat. § 97-2(5). Neither the first nor second method provided in the Act as it relates to actual wages earned can be used. Id . The fifth method in N.C. Gen. Stat. § 97-2(5) cannot be used unless there is a finding that unjust results would occur using one of the other methods. Bond v. Foster Masonry, Inc.,139 N.C. App. 123, 532 S.E.2d 583 (2000). In this case, using the third method of N.C. Gen. Stat. § 97-2(5) results in *Page 7 
an average weekly wage that is fair to both parties and approximates what plaintiff would have earned had she not been injured.Bond v. Foster Masonry, Inc., supra.
3. Pursuant to the third method outlined in N.C. Gen. Stat. § 97-2(5), dividing plaintiff's wages by the number of weeks she worked prior to her injury by accident, results in an average weekly wage of $179.72 with the resulting compensation rate of $119.82. N.C. Gen. Stat. § 97-2(5).
4. As a result of plaintiff's February 10, 2004 injury by accident and defendant's miscalculation of plaintiff's average weekly wage and compensation rate, plaintiff is entitled to have defendant pay to her an additional $32.30 for each week defendant paid total disability compensation at the incorrect compensation rate of $87.52. N.C. Gen. Stat. §§ 97-2(5), 97-29.
5. In the case at bar, the greater weight of the medical evidence establishes that plaintiff's condition is directly and causally related to her injury by accident on February 10, 2004 and the current condition at issue affects the same body part listed on defendant's Form 60. As such, the Parsons presumption applies, and based upon the totality of the credible evidence of record, defendant failed to rebut the presumption that the medical treatment is directly related to the compensable injury. Perez v. AmericanAirlines/AMR Corp., 174 NC App. 128, 620 S.E.2d 288 (2005),disc. rev. improvidently allowed,360 N.C. 587, 634 S.E.2d 887 (2006); Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997).
6. Plaintiff's need for a total right knee replacement is the direct and natural result of and causally related to her February 10, 2004 admittedly compensable injury by accident. N.C. Gen. Stat. § 97-2(6); Perez v. American Airlines/AMRCorp., supra; Parsons v. Pantry, Inc., supra. *Page 8 
7. A claimant can prove disability in one of four ways by producing: (1) medical evidence that she is physically or mentally, as a consequence of the work related injury, incapable of work or any employment; (2) evidence that she is capable of some work, but has after reasonable effort has been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) evidence that she has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes Prod.Distrib., 108 N.C. App. 762, 425 S.E.2d 454 (1993). The greater weight of the medical evidence in this case shows that as the result of the compensable injury, plaintiff is physically incapable of work in any employment.
8. As the result of plaintiff's admittedly compensable February 10, 2004 injury by accident, plaintiff is entitled to have defendant pay to her ongoing total disability compensation at the rate of $119.82 per week through the present and continuing until such time as she returns to suitable employment or further Order of the Commission. N.C. Gen. Stat. § 97-29;Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993).
9. Based upon her admittedly compensable February 10, 2004 injury by accident and causally related right knee condition, plaintiff is entitled to have defendant pay for all related medical expenses incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including the expenses associated with her total right knee replacement. N.C. Gen. Stat. §§ 97-25; 97-25.1.
10. Because defendant's defense of this matter was unreasonable, and indicative of stubborn, unfounded litigiousness, plaintiff is entitled to sanctions in the form of attorney's fees *Page 9 
for counsel for plaintiff pursuant to N.C. Gen. Stat. § 97-88.1. Sparks v. Mountain BreezeRestaurant, 55 N.C. App. 663, 286 S.E.2d 575 (1982).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff an additional $32.30 for each week defendant paid total disability compensation at the incorrect weekly compensation rate of $87.52. Having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject the attorney's fee awarded below.
2. Defendant shall pay to plaintiff ongoing total disability compensation at the rate of $119.82 per week through the present and continuing until such time as she returns to suitable employment or further Order of the Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject the attorney's fee awarded below.
3. Defendant shall pay for all related medical expenses incurred or to be incurred, by plaintiff as the result of her admittedly compensable February 10, 2004 injury by accident and causally related right knee condition, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including the expenses associated with her total right-knee replacement, when bills for the same have been processed pursuant to procedures established by the Industrial Commission.
4. A reasonable attorney's fee in the amount of 25% of the compensation awarded herein is approved for counsel for plaintiff. From the amounts having accrued, this fee shall be *Page 10 
deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check that would be payable to plaintiff thereafter.
5. Counsel for plaintiff shall submit to the Full Commission an affidavit of an accounting of the work performed on plaintiff's behalf after July 12, 2006 and a requested hourly rate so that an attorney's fee pursuant to N.C. Gen. Stat. § 97-88.1 can be assessed.
6. Defendant shall pay the costs.
This the 29th day of March 2010.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ STACI T. MEYER COMMISSIONER *Page 1